**SEVILLE v. UNITED STATES.**

No. 11565.

Circuit Court of Appeals, Ninth Circuit.

Aug. 18, 1947.

Dee B. Tanner, of Los Angeles, Cal., for appellant.

James M. Carter, U. S. Atty., and Ronald Walker and Robert E. Wright, Asst. U. S. Attys., all of Los Angeles, Cal. (Lasher B. Gallagher, of Los Angeles, Cal., of counsel), for appellee.

Before DENMAN, STEPHENS, and ORR, Circuit Judges.

DENMAN, Circuit Judge.

Appellant, an able seaman, appeals from a decree in admiralty (a) denying him recovery under the Jones Act, 46 U.S.C.A. § 688, for a claimed negligent injury to his hand and wrist in a fall on a dock in San Francisco during the loading of his vessel, the S. S. "Sea Blenny," caused by the swinging against him of a sling load, raised by the vessel's electric winch; and (b) denying him maintenance because he failed to establish his claim that the injury in the course of his employment was caused by appellee's negligence.

A. This libel was tried below on depositions and hence here is entitled to a trial de novo. The Ernest H. Meyer, 9 Cir., 84 F.2d 496. We have given the testimony such consideration and agree with the district judge below that appellant has failed to maintain his burden of proof on the tendered issue of appellee's negligence.

Appellant, with two ordinary seamen, was in charge of filling a rectangular sling board with ship's stores for her out voyage from San Francisco to Guam. The sling loading was on the dock on the starboard side of the ship. The loading was out of sight of the winchman, who received the signal to lift the sling from the appellant through a deckman in sight of both the dock and winch. The winch hauls upward the sling load by a cargo fall hanging from a boom extending over the ship's side. Another fall pulls the sling load over the cargo hold when the lifting fall has raised the load above the deck line.

Appellant knew that the outward boom tip was not over the center of the sling board and that he would have to move away from the load because it would swing toward h m when it was raised. Appellant did not move fast enough to escape the swing and it pushed him backwards causing him to fall and fracture two bones in his hand.

■ No negligence is shown in the acts of the winchman who caused the sling load to be raised. Appellant claims that one or the other of the two seamen negligently let go of his hold on the sling load when it swung toward him. Neither was called as a witness. The written statement of one is that as the swing load swung away from the two seamen, "I cannot at this time remember whether one or both of us let go. What I do know is that it did swing and hit Mr. Seville." The other seaman's statement is "At the time Seville was hurt I don't recall whether all three of us were holding it or not. All I recall is that in some way the sling load hit him, and he fell over backwards and hurt his wrist. I don't remember whether there was anything on the dock over which he might have tripped. I do not think that the accident could have been helped." Appellant's burden of proof is not so established.

■ Appellant seeks to invoke the doctrine of res ipsa loquitur. We cannot see its application where, as here, there is the usual and expected swinging of a sling load and the accident as well may have been caused by the failure to avoid it as by negligence of the injured man's fellow workmen. Cf. Johnson v. United States, 9 Cir., 160 F.2d 789. It was not such an unusual happening as the derailment of the train in Jesionowski v. Boston & Maine R. Co., 329 U.S. 452, 458, 67 S.Ct. 401, 404, where the Court states "Derailments are extraordinary, not usual, happenings. When they do occur, a jury may fairly find that they occurred as a result of negligence."

■ Appellant sailed with his ship with his injured hand. He claims that on the voyage to Guam and return to Wilmington, California, appellee failed in its duty to care for his injury, causing him unnecessary pain and suffering and prolonging the cure of the fractures in his hand. Nowhere in the libel does he tender such an issue and hence no testimony was offered by respondent libelee to meet it. While it may be in our power in an admiralty appeal to allow a reframing of the issues here and the taking of new testimony, no motion to that end was made and, if made, we see no reason why it should be granted after failing to tender the issue in the court below.

■ B. Maintenance. It was error to deny consideration of the claim for maintenance during the period of appellant's disablement from the injury received in the course of his employment, on the ground that it was not shown to be caused by his employer's negligence. As stated in The Osceola, 189 U.S. 158, 175, 23 S.Ct. 483, 487, 47 L.Ed. 760.

"1. That the vessel and her owners are liable, in case a seaman falls sick, or is wounded, in the service of the ship, to the extent of his maintenance and cure, and to his wages, *at least* so long as the voyage is continued. * * *

"4. That the seaman is not allowed to recover an indemnity for the negligence of the master, or any member of the crew, but is entitled to maintenance and cure, *whether the injuries were received by negligence or accident.*" (Emphasis supplied.)

Since then the right has been held to extend for a reasonable time after the end of the voyage on which he was employed. The Bouker No. 2, 2 Cir., 241 F. 831, 834; Smith v. Lykes Bros.-Ripley S. S. Co., 5 Cir., 105 F.2d 604, 605; cf. Calmar S. S. Corporation v. Taylor, 303 U.S. 525, 529, 58 S.Ct. 651, 82 L.Ed. 993; De Zon v.

American President Lines, 318 U.S. 660, 667, 63 S.Ct. 814, 87 L.Ed. 1065.

Nor is there merit in appellee's contention that appellant is not entitled to recover maintenance unless he is under the care of a physician during the entire period of his disability. A sailor may sprain his arm in handling cargo on the last day of his employment and the marine hospital physician may advise him that no medical treatment is needed. Instead he advises that all that is necessary is to keep the arm in a sling for a fortnight without using it. The sailor does so and at the end of that time is able to work. His right of recovery for maintenance is not lost because it was not necessary again to seek medical aid. Indeed, in a simple sprain, so occasioned, requiring no more than disuse for a cure, he would be entitled to recover his maintenance without imposing on the owner a physician's charge.

We do not consider the dictum of Luksich v. Misetich, 9 Cir., 140 F.2d 812, 814, as contravening this elementary right of the seaman's contract with his employer. We there said "However, there is no indication that full recovery resulted from continued and necessary medical treatment, an essential to enlarge the period during which libelant is entitled to compensation. Therefore, no good cause is shown for the taking of the testimony in question, and the motion is denied insofar as it relates to such evidence." The term "medical treatment" should be deemed to include the advice to do nothing with a sprain or a fractured limb for a certain period and the following of such advice. As stated, in simple matters one may administer his own medical treatment. The "cure" during which a seaman may have his maintenance is not to be denied him if a simple disablement is removed by an efficient self medical treatment. To hold otherwise would deny the liberal interpretation of the seaman's contract required of all legislation affecting seamen as wards of the admiralty. Aguilar v. Standard Oil Co., 318 U.S. 724, 729, 63 S.Ct. 930, 87 L.Ed. 1107.

In the instant case it appears that the appellant was an out patient of the marine hospital receiving treatment for the fractured hand from May 22, 1945, to June 23, 1945, when the fracture was found healed by a marine hospital physician, but the hand weak because of disuse. However, the pain existed and was found by another physician on July 27, 1945, who also discovered a second fracture not united and who advised that it would be six weeks before appellant would be able to use his hand in general work such as is required of a sailor.

There is no evidence as to the time after July 27, 1945, during which he is entitled to maintenance. Appellant claims maintenance at the rate of $3.50 per day, relying on The City of Avalon, 156 F.2d 500, 501. At that rate the maintenance from May 22 to July 27 would amount to $237. Appellant admits that he has received $258, that is $21 more than due on July 27, or for 6 days thereafter, for which he stipulated satisfaction for his maintenance claim.

At some unstated date after July 27, 1945, appellant was a resident patient at the marine hospital in San Francisco for another disability. The date of his entry there is not proved but on the testimony it well could have been within the six days for which he received payment. He has not established his burden of proof that he is entitled to more than he received.

The decree is affirmed.